# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00751-CR

**Leonard Cox, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NO. D-1-DC-10-500333, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Leonard Cox was charged with the crime of causing bodily injury to an elderly person. *See* Tex. Penal Code § 22.04(a)(3), (f) (explaining that person commits crime if he causes bodily injury "to a child, elderly person, or disabled person" and that crime is third-degree felony if it "is committed intentionally or knowingly"). At the time of the alleged assault, the victim, Eurgene Nathenson, was 69 years old. Cox pleaded not guilty to the charges and waived his right to a jury trial. At the conclusion of the trial, the district court found Cox guilty and sentenced him to 6 years' imprisonment but suspended the sentence and placed Cox under community supervision for 3 years. After his sentence was imposed, Cox filed a motion for new trial alleging that his trial counsel did not provide effective assistance. Cox's motion was overruled by operation of law. *See* Tex. R. App. P. 21.8 (explaining that if motion is not ruled on within 75 days after sentence was imposed, motion "will be deemed denied"). Cox appeals his conviction. We will affirm the district court's judgment of conviction.

## BACKGROUND

Cox was romantically involved with a woman named Carolyn Cookson. Weeks before the assault at issue, Cox and Cookson were in a motorcycle accident that resulted in both of them being treated for injuries. When they were released from medical care, Cox had a cast on his arm, and Cookson was required to stay in a wheelchair while her broken leg was healing. After Cookson was released from the hospital, David Kellum, who is Cookson's brother, moved in with Cookson to help her during her recovery. In addition to the help that she received from Kellum and Cox, some of Cookson's friends, including Nathenson and his wife, also provided assistance. Cookson and Nathenson were part of a motorcycle-riding social group and had been friends for years.

The assault that is the subject of this case occurred at Cookson's home. Immediately prior to the alleged assault, Cookson and Cox were eating breakfast in the kitchen, and Nathenson came to Cookson's house to see her. Although Nathenson testified that he rang the doorbell, Cox testified that he did not hear a doorbell. However, Nathenson also explained at trial that he did not wait for anyone to answer the door and instead opened the front door and entered the house. After entering the home, Nathenson made his way to the kitchen and found Cookson and Cox. What happened next is disputed and formed the basis for the trial and Cox's conviction. What is not in dispute is that shortly after Nathenson entered the kitchen, a fight ensued between Cox and Nathenson, that Kellum came downstairs to see what was happening, that the police were called, that Cox was subsequently arrested, and that Cox was found guilty of causing bodily injury to Nathenson.

After Cox was sentenced, he filed a motion for new trial alleging that his trial attorney provided ineffective assistance of counsel and attached to the motion several exhibits,

which he alleged showed his counsel's ineffective performance. Although Cox requested that the district court convene a hearing regarding his motion, no hearing was scheduled, and Cox's motion was denied by operation of law. *See* Tex. R. App. P. 21.8. Cox appeals his judgment of conviction.

## DISCUSSION

On appeal, Cox presents two issues. First, he urges that the district court erred by failing to schedule a hearing regarding his motion for new trial. Second, he contends that the district court erred by excluding the results of his polygraph test.

### Hearing on Motion for New Trial

As mentioned above, in his first issue, Cox contends that the district court erred by not scheduling a hearing regarding his motion for new trial.

A hearing on a motion for new trial has two purposes: "deciding whether the cause shall be retried" and "prepar[ing] a record for presenting issues on appeal in the event the motion is denied." *Trevino v. State*, 565 S.W.2d 938, 941 (Tex. Crim. App. 1978). However, the right to a hearing is not an absolute right. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). On the contrary, "a hearing is *not* required when the matters raised in the motion for new trial are subject to being determined from the record." *Id.* at 816. In accordance with that rule, courts have held that a hearing is required if a defendant "presents a motion for new trial raising matters" that are "not determinable from the record." *Id.*; *see Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). However, in an effort to prevent unfettered fishing expeditions, that rule is subject to the limitation that the defendant establish the existence of reasonable grounds showing that he would be entitled

3

to relief. *Smith*, 286 S.W.3d at 339. Accordingly, courts require "as a prerequisite to hearing when the grounds in the motion are based on matters not already in the record, that the motion be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis of the claim." *Id.* To be sufficient, a fair reading of the affidavit must give rise to reasonable grounds to support the claims, but "affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed" and do not require that a hearing be held. *Id.*; *see Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009).

When reviewing the denial of a hearing on a motion for new trial, appellate courts apply an abuse-of-discretion standard. *Smith*, 286 S.W.3d at 339; *see also id.* (stating that court abuses its discretion if its decision lies outside zone of reasonable disagreement); *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005) (explaining that court abuses its discretion if its ruling is unreasonable or arbitrary). In performing this review, appellate courts are limited to reviewing the trial court's "determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning that they could entitle the defendant to relief." *Smith*, 286 S.W.3d at 340.

In his appellate brief, Cox alleges that the district court should have convened a hearing based on the allegations in his motion that his trial attorney did not provide effective assistance of counsel. The right to effective assistance is not a guarantee of errorless or of perfect assistance. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *see Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013). Accordingly, decisions regarding effectiveness must be based on the totality of the representation, *Frangias*, 392 S.W.3d at 653; *see also Davis v. State*,

413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (explaining that assessment of performance should consider cumulative effect of counsel's deficiencies), and evidence in the record of isolated errors does not render an attorney's performance ineffective, *Robertson*, 187 S.W.3d at 483. However, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 392 S.W.3d at 653.

To successfully present an ineffectiveness claim, the defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To prevail, the defendant must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. If a defendant fails to satisfy either prong of the test established in *Strickland*, the court need not consider the remaining prong. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

When arguing on appeal that the district court erred, Cox points to four alleged instances of ineffective assistance.[1] First, Cox alleges that his attorney failed to impeach Kellum's

---

[1] The fact section of Cox's brief is approximately 40 pages in length. That section contains a summary of Cox's testimony regarding the alleged assault, provides additional details regarding the incident that he did not testify about but surmises must have occurred, criticizes the manner in which the police interviewed the witnesses to the incident, and asserts that the police officers believed that he was not the aggressor. In addition, Cox also discusses the motorcycle accident, provides details about his relationship with Cookson, suggests that at various times he felt as though Cookson was not being honest with him, explores Cookson's family dynamics and past sexual history, mentions how he felt that Nathenson disliked him and blamed him for the injuries that Cookson sustained in the accident, chronicles the end of the romantic relationship between him and

testimony at trial. During the trial, Kellum explained that he saw Cox assault Nathenson by hitting Nathenson with his cast. On appeal, Cox urges that Kellum's testimony was inconsistent with the statement that he provided to the police shortly after the incident. That statement was attached to Cox's motion for new trial. In his statement, Kellum explained that on the morning of the incident, he heard Cookson scream, ran downstairs to see what was going on, saw Cox grab Nathenson and throw him onto a dining table, and yelled at Cox to leave Nathenson alone. Further, in his statement, Kellum explained that although he heard sounds indicating that there was a struggle before he went downstairs, the only physical altercation that he saw was when Cox threw Nathenson. In light of this statement, Cox contends that his attorney should have impeached Kellum's testimony that he observed Cox hit Nathenson with his cast. However, the record shows that Cox's attorney did impeach Kellum's testimony by pointing out that his statement to the police made no mention of observing Cox hit Nathenson.

Second, Cox seems to argue that his trial counsel did not thoroughly question Nathenson about the injuries that he allegedly sustained. However, the extent of his injuries were established when the State admitted as exhibits Nathenson's medical records as well as photos taken of the injuries shortly after the incident.

---

Cookson, insists that he continued to see Cookson after the incident in an effort to ascertain why Cookson lied to the police and to discover whether Cookson was planning to sue him for the injuries that she sustained in the crash, details how Nathenson filed a grievance against him with the State Bar of Texas, compares the performance of his lawyer during the grievance proceeding with that of his trial attorney, questions the efficacy of his trial attorney, and lists several actions and inactions by his trial attorney that he disagreed with. However, during the argument section of his brief, Cox limits his ineffective-assistance challenge to the specific actions discussed above.

Third, Cox contends that his attorney should have impeached the testimony of Nathenson and Cookson regarding their description of the events occurring immediately before the incident. Specifically, Cox contends that his attorney should have called police officers and his investigator to the stand to show "Nathenson's true motives at the time he entered the home." Regarding the investigator, Cox attached an affidavit to his motion for new trial in which an acquaintance of his, Cindi Wiggins, stated that she heard his investigator relate a statement made by Nathenson in which Nathenson said that he entered Cookson's home on the morning in question by "just walk[ing] in as was custom." Further, Cox argues that the police officers that investigated the incident would have corroborated that characterization of the events in question because they would testify that Cox or Cookson told them that Nathenson entered the house without express permission. According to Cox, this evidence would have impeached the testimony of Nathenson and Cookson regarding the events leading up to the altercation and would have helped show that Nathenson intended to confront Cox on that morning.

However, the requested testimony would not have contradicted the testimony of Nathenson or Cookson. In his testimony, Nathenson explained that Cookson left the door unlocked so that people who were stopping by to help her while she recovered could enter, that he rang the doorbell to Cookson's home and entered the house without waiting for someone to open the door, and that once he was inside, Cookson shouted that she was in the kitchen. Similarly, Cookson testified that Nathenson knocked on the door, entered the home without someone opening the door for him, and walked to the kitchen. In addition, in light of the fact that the desired testimony would not have contradicted the testimony of Nathenson or Cookson and given the nature of the

7

desired testimony from the police officers and the investigator, it is not entirely clear that Cox's attorney would have been able to introduce that testimony. *See* Tex. R. Evid. 801(d) (explaining that hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to provide the truth of the matter asserted"), 802 (forbidding, in general, admission of hearsay).

Finally, Cox argues that the district court erred by failing to convene a hearing because he presented evidence that his trial attorney was "laboring under the influence" of alcohol from the night before. As support for this proposition, Cox attached to his motion for new trial the affidavit from Wiggins mentioned above. In her affidavit, Wiggins stated that on the night before trial, she overheard a conversation between Cox and his attorney in which she thought that the attorney sounded intoxicated. Moreover, Wiggins explained that the attorney's "language was slurred and very vulgar" and that he said that he would "kill" the State's witnesses during their testimonies. In addition, Wiggins related that the attorney told Cox to meet him at the office early in the morning on the day of trial but that the attorney did not show up for the meeting.

However, other than asserting that his counsel seemed intoxicated on the night before trial and that his counsel missed a scheduled meeting before trial, Cox did not establish the existence of reasonable grounds showing that he could be entitled to relief on this ineffectiveness claim. *See Smith*, 286 S.W.3d at 339. In arguing this claim, Cox has not presented reasonable grounds showing that the result of the trial would have been different in the absence of his attorney's alleged intoxication. *See Strickland*, 466 U.S. at 694. Moreover, although we need not address this allegation further, we note that an ineffectiveness claims is analyzed by considering the totality of

the attorney's representation. When representing Cox, at Cox's suggestion, his attorney attempted to introduce the results of a polygraph test that Cox had taken regarding the incident. His attorney also presented an opening statement during the trial in which he argued that the incident was the result of hostility that Nathenson had towards Cox, cross-examined the State's witnesses, called Cox to the stand to provide testimony regarding the incident and the events leading up to it, and gave a closing statement in which he argued that the evidence did not establish Cox's guilt beyond a reasonable doubt.

In light of the preceding, we cannot conclude that the district court abused its discretion by determining that Cox's ineffectiveness claims were either not reasonable or were determinable from the record and that, therefore, a hearing on the motion for new trial was not required. Accordingly, we overrule Cox's first issue on appeal.

**Polygraph Results**

In his second issue on appeal, Cox contends that the district court erred by excluding the results of the polygraph test that he took regarding the events in question. In presenting this claim, Cox acknowledges that Texas courts have repeatedly held that polygraph results are not admissible. *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012) (explaining that court of criminal appeals has continually held that "the results of polygraph examinations are inadmissible over proper objection because the tests are unreliable"). However, Cox contends that those rulings violate the Equal Protection Clause because trial courts have used the results during probation revocation proceedings. *See* U.S. Const. amend. XIV, § 1 (prohibiting states from denying people within their jurisdiction "the equal protection of the laws").

In order to preserve an issue for appeal, the record must show that "the complaint was made to the trial court" and that the trial court made a ruling or refused to make a ruling. Tex. R. App. P. 33.1. During a pretrial hearing, Cox discussed the polygraph results, and the district court stated that the law was settled that polygraph results are not admissible. However, the district court did allow Cox to proffer the results of the polygraph. When Cox was proffering the results, he did not present his constitutional argument to the district court, and Cox essentially concedes that in his brief. *See Perry v. State*, 367 S.W.3d 690, 694 (Tex. App.—Texarkana 2012, no pet.) (explaining that issue is not preserved for review when "complaint made on appeal does not comport with the complaint made at trial").[2]

Accordingly, we must conclude that Cox did not preserve this issue and, therefore, overrule his second issue on appeal.

**CONCLUSION**

Having overruled Cox's two issues on appeal, we affirm the district court's judgment of conviction.

---

[2] Although Cox does not mention the polygraph in the argument portion of his first issue, he does imply in his second issue that his trial attorney's handling of the polygraph issue was ineffective. In particular, Cox contends that one of his trial strategies "was to waive a jury trial and attempt to admit the polygraph" before the district court because "the chances of it being admitted might be much greater in front of a judge as a trier of fact than a jury." Moreover, although Cox concedes that the polygraph results would likely not have been admitted, he also wanted his attorney to preserve his constitutional claims by objecting to the denial of their admission. Even construing Cox's contentions as an ineffectiveness challenge, we would be unable to either directly sustain that challenge or conclude that the district court should have held a hearing on that issue given the remainder of his counsel's representation and given the current state of the law pertaining to polygraph results. *See Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012).

10

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   August 26, 2014

Do Not Publish