

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00064-CR

_____

CECIL ALLAN MOORE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 7th District Court
Smith County, Texas
Trial Court No. 007-1294-14

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Pursuant to a plea bargain agreement, Cecil Allan Moore pled guilty to indecency with a child and, on February 11, 2015, was placed on deferred adjudication community supervision for a period of ten years. On February 7, 2020, the State filed a motion to adjudicate Moore's guilt. After Moore pled true to one of the State's allegations, the trial court revoked Moore's community supervision, adjudicated his guilt, and sentenced him to fifteen years' imprisonment.

On appeal, Moore complains that the trial court was without jurisdiction to adjudicate his guilt, argues that the trial court erred in revoking his community supervision, and raises a laundry list of complaints, including that the trial judge was guilty of a "cover-up" and "*The Revocation Proceeding Resembled a Sunday Drive By Smartphone Directions Where the End Was Decided Before the Proceeding Began*."[1] We conclude that the trial court had jurisdiction to adjudicate guilt and find no abuse of discretion in the trial court's decision to do so. We also find that Moore's remaining multifarious points of error are either meritless, unpreserved, not clear and concise, or have no effect on the outcome of this case. As a result, we affirm the trial court's judgment.

## I.    Factual Background

The terms and conditions of Moore's community supervision prohibited him from owning or possessing pornographic materials or using the internet to access obscene material. As a special condition, Moore was also required to submit to clinical polygraph examinations.

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

After Moore admitted during a polygraph examination to viewing pornographic material, a violation report was filed on January 22, 2020, and the trial court issued a warrant for Moore's arrest on February 5. On February 7, the State's motion to adjudicate guilt alleged that Moore "possessed pornographic materials via email."

Moore signed a written stipulation of evidence and written plea of true to the allegation that he possessed pornographic materials via email. The stipulation was signed by Moore, his counsel, the judge, and the court clerk. Moore had also signed written admonishments showing that he understood the offense charged and the range of punishment.

At the revocation hearing, Moore's plea paperwork was introduced into evidence, and Moore acknowledged that he had reviewed it with his attorney, acknowledged that he understood the paperwork and the range of punishment, and signed it. Moore told the court he understood that his plea of true relieved the State of its burden to bring forward evidence, and Moore's counsel represented to the trial court that Moore was competent, understood his rights, and had "been a lot of help [to] his defense." After several additional admonishments, Moore pled true to the allegation that he possessed pornographic material via email because the allegation was true and for no other reason. The trial court found Moore to be competent and accepted his plea of true to the State's allegation.

After waiving his Fifth Amendment rights, Moore testified that he knew he was not permitted to possess pornographic materials but stated that he saw such images online. Moore said, "I was using Firefox on eBay, and a little window popped up and said, 'Click here for more bargains.' And when I clicked, it was a page that sold bikinis, and it had a lot of adult models in

bikinis." According to Moore, there was a photo of a "string bikini . . . [that] exposed the model a little bit too much," including her labia. He testified that he viewed the website "for about ten seconds, and then got off the page." Moore claimed, "Once you view something like that on eBay, they keep coming back to it automatically. And that happened another couple of times." Moore admitted that he told Bridget Kennedy, a psychologist who treats sex offenders, that he saw nude photographs on the internet because "[t]hey pop up if you . . . do a search for almost anything." When the State asked how many times he had viewed photos of naked women, Moore said, "That happens all the time on the internet; and I don't write it down."

Bobby Rachel, a polygraph examiner who questioned Moore about his compliance with the terms and conditions of his community supervision, testified that he defined pornography as "lewd images of a penis, a vagina, a penetration/sexual act, where those things can be seen," and asked Moore if he had seen it. According to Rachel, Moore admitted that he had viewed pornography three different times and, while admitting to viewing photos of a labia, never explained that the images came from a bikini website. Instead, Moore had told him that he clicked on spam links in his email which took him to pornographic websites where he saw pornographic images involving "female nudity" three times.

A recording of Rachel's questioning showed that Moore admitted that some pornography "trickle[d] in on [his] email every once in a while" and that he viewed the pornography. Moore told Rachel he clicked on a "sling bikini" link in a spam email, saw the pornographic images, and looked at them "probably" longer than he should have.

After hearing the evidence, the trial court determined that the State's allegation that Moore possessed pornographic materials via email was true and sentenced him to fifteen years' imprisonment.

## II.     The Trial Court Had Jurisdiction to Adjudicate Moore's Guilt

Moore argues that the trial court was without jurisdiction to adjudicate his guilt because capias was issued after a notice of violation report but before the State filed its motion to adjudicate.  We disagree.

The defendant may be arrested and detained on a violation of a condition of deferred adjudication community supervision.  TEX. CODE CRIM. PROC. ANN. art. 42A.108(a).  A court may issue a warrant for the defendant's arrest "[a]t anytime during the period of community supervision."  TEX. CODE CRIM. PROC. ANN. art. 42A.751(a) (Supp.); *see* TEX. CODE CRIM. PROC. ANN. art. 42A.108(a).  Article 42A.108(c) of the Texas Code of Criminal Procedure states,

> (c)     A court retains jurisdiction to hold a hearing . . . and to proceed with an adjudication of guilt, regardless of whether the period of deferred adjudication community supervision imposed on the defendant has expired, if before the expiration of the supervision period:
>
> (1)     the attorney representing the state files a motion to proceed with the adjudication; and
>
> (2)     a capias is issued for the arrest of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 42A.108(c).

It is undisputed that Moore's community supervision had not expired, and this article does not contain any requirement that the motion to proceed with adjudication must be filed before capias is issued. *See Barretta v. State*, No. 06-19-00141-CR, 2019 WL 6335428, at *1

(Tex. App.—Texarkana Nov. 27, 2019, pet. ref'd) (mem. op.) ("A capias may issue on any violation of the terms and conditions of community supervision and may precede the filing of a revocation motion.") (citing *Ruiz v. State*, 100 S.W.3d 259, 260 (Tex. App.—San Antonio 2002, pet. ref'd)).[2]  Because the requirements of Article 42A.108 were met, the trial court had jurisdiction to adjudicate Moore's guilt.  We overrule Moore's first point of error.

## III.     The Trial Court Did Not Abuse Its Discretion by Adjudicating Moore's Guilt

The determination to proceed with an adjudication of guilt after a defendant is placed on deferred adjudication community supervision "is reviewable in the same manner as a revocation hearing."  TEX. CODE CRIM. PROC. ANN. art. 42A.108(b).  "At a revocation hearing, the State must prove by a preponderance of the evidence that a condition of community supervision has been violated."[3]  *Perry v. State*, 367 S.W.3d 690, 693 (Tex. App.—Texarkana 2012, no pet.); *see Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).  "A plea of true, standing alone, is sufficient to support revocation."  *Perry*, 367 S.W.3d at 693 (citing *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. [Panel Op.] 1979)).

In a hearing on a motion to revoke community supervision, the trial court is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given their testimony.  *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. [Panel Op.] 1980).  When the State has met its burden of proof and no procedural obstacle is raised, the decision whether to

[2]"Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'"  *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[3]The preponderance of the evidence standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated.  *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006).

revoke community supervision is within the discretion of the trial court. *Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. [Panel Op.] 1979). As a result, our review of the trial court's order revoking community supervision is limited to determining whether the trial court abused its discretion. *Clerkley v. State*, 515 S.W.3d 331, 332 (Tex. App.—Tyler 2015, no pet.) (citing *Cardona*, 665 S.W.2d at 493). If there is some evidence to support the finding of even a single violation, the revocation order must be upheld. *See Cochran v. State*, 78 S.W.3d 20, 28 (Tex. App.—Tyler 2002, no pet.) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980)).

Here, Moore's plea of true, his testimony at trial, the video of his admissions that he viewed pornographic materials via email, and Rachel's testimony were sufficient to establish, by a preponderance of the evidence, the State's allegation that Moore violated a term and condition of his community supervision. As a result, we find no abuse of discretion in the trial court's decision to revoke Moore's community supervision and adjudicate his guilt on the underlying offense. We overrule this point of error.

## IV. Moore's Remaining Complaints

Moore raises several additional complaints, including that his plea was involuntary and unintelligent and that the trial court erred by (1) failing to modify Moore's community supervision conditions, (2) failing to afford Moore due process when he arrested Moore before the motion to adjudicate was filed, (3) denying Moore's motion for new trial, (4) denying Moore's motions to recuse the trial judge, (5) holding virtual hearings on Moore's motion to recuse, (6) quashing, in part, Moore's subpoena of the court reporter, (7) denying Moore's first

7

supplement to his motion for new trial, (8) entering allegedly erroneous findings of fact concerning the clerk's and reporter's records and the case in general, and (9) denying Moore's second supplement to his motion for new trial. In addition to these complaints being multifarious and unclear, we find that they are meritless, unpreserved, and inadequately briefed. As a result, we overrule Moore's remaining complaints.

### A. Moore's Complaint that his Plea Was Involuntary or Unintelligent Is Meritless

The transcript from the revocation hearing shows that nothing suggested that Moore's plea of true to the State's allegation was involuntary or unintelligent. Moore's counsel at trial, who is also his counsel on appeal, affirmatively represented to the trial court that Moore was competent and understood the allegations against him and the range of punishment. Yet, on appeal, Moore challenges the condition of community supervision requiring him to refrain from purchasing, owning, or possessing pornographic materials. Moore's brief implies that Moore's plea of true was involuntary and unintelligent because the condition of his community supervision alleged to have been violated was vague.

But the terms and conditions of Moore's community supervision derived from a plea bargain agreement with the State. By entering into this contractual relationship without objection at the time he was placed on community supervision, Moore waived any rights encroached upon by the terms of his community supervision. *See Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999); *Hill v. State*, 440 S.W.3d 670, 675 (Tex. App.—Tyler 2012, no

pet.). As a result, we find Moore's argument that his plea was involuntary and unintelligent meritless.[4]

### B. Moore Failed to Preserve Several Complaints

"Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)). When an issue has not been preserved for appeal, this Court is not permitted to address the merits of that issue. *Id.* "As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context," and that either the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a).

Moore argues that the trial court should have modified the terms and conditions of his community supervision so that, pursuant to Article 42A.454 of the Texas Code of Criminal Procedure, he could have been required to submit to regular inspection or monitoring of each electronic device used by him to access the internet. TEX. CODE CRIM. PROC. ANN. art. 42A.454(b)(2). According to Moore, this would have shown that he was not violating the terms and conditions of his community supervision. Moore never objected to the terms and conditions

---

[4]Moore also appears to argue that his plea was involuntary because the plea papers were signed before the revocation hearing and because the trial court ignored Moore's explanation of how he came to see the pornography, but we find those arguments meritless, as well as inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

9

of his community supervision, this complaint was not timely made to the trial court, and due to the evidence presented during the revocation hearing, we find meritless Moore's assertion that electronic monitoring would have proven that he had not possessed pornography.

Next, Moore argues that the trial court violated due process by arresting him before the State filed its motion to adjudicate guilt. We do not find that Moore timely raised this issue before the trial court.[5] "[A]lmost all error—even constitutional error—may be forfeited if the appellant failed to object." *Fuller v. State*, 253 S.W.3d 220, 232 n.48 (Tex. Crim. App. 2008). This issue was not preserved.

Moore's brief also appears to complain about his admissions during a polygraph examination. He argues that the trial court relied on hearsay evidence admitted by Rachel. The record shows that Moore failed to lodge any objection to the testimony recited above. Even if Moore's brief contains a complaint about polygraph evidence, "failure to object to polygraph evidence waives the error." *Sanchez v. State*, 222 S.W.3d 85, 89–90 (Tex. App.—Tyler 2006, no pet.).

### C.     Moore's Remaining Complaints Are Inadequately Briefed

"To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (citing TEX. R. APP. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex.

---

[5]Although Moore's first motion for new trial was timely filed, this complaint was not included within it. Instead, the issue was raised in a motion filed almost nine months after the trial court adjudicated Moore's guilt, which was well outside of the trial court's plenary power.

Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). "Because the Texas Court of Criminal Appeals has emphasized that an appellate court has no obligation to construct and compose issues, facts, and arguments for an appellant, encompassed within Rule 38.1 is the party's task of explaining or discussing why an argument has substance." *Id.* (citing *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Lucio*, 351 S.W.3d at 896–97; *Busby*, 253 S.W.3d at 673).

"To avoid forfeiture, a party must provide substantive analysis by applying the law to the facts." *Id.* (citing *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal to grant petition for discretionary review)). "A brief that fails to apply the law to the facts does not comply with Rule 38.1 and presents nothing for review." *Id.* (citing *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003)).

The remainder of Moore's brief reads more like a laundry list of alleged deficiencies and is not clear or concise. Moore's brief recites the arguments made in his motion for new trial, motion to set aside the judgement, and briefing in support of those motions, but fails to properly brief the issue of why the trial court abused its discretion in denying them.[6] Moore complains that the trial court denied his first and second supplements to his motion for new trial, but the record shows that they were filed well after the trial court's plenary power expired, and Moore fails to address why their denial was erroneous.

---

[6]Moore filed a motion for new trial on April 6 and a brief in support of the motion for new trial on April 7, 2020. In support of his motion for new trial, Moore attached the affidavit of Jonathan Ben Mims, the owner of IT Solutions, who reviewed Moore's computer and concluded that there was no pornography on it. Even so, Moore never said that he only viewed pornography on his computer.

11

Moore also raises several complaints about alleged bias on the part of the trial court. He complains that the trial court engaged in an ex parte communication when it wrote a note that stated, "[I]f deceptive again, please file ATR" on a May 4, 2018, notice of violation report stating that Moore had failed a polygraph examination for the second time. He argues that the trial court's bias was shown when he ordered Moore arrested without a motion to adjudicate being first filed, placed his notes into the record, and acted as counsel for the court reporter after Moore accused her of doctoring the record. He complains of proceedings and rulings following his motions to recuse the trial judge, which were not filed until after the trial court entered its judgment adjudicating guilt and were based on the alleged failure to record an objection to the State's use of a presentence investigation report during Moore's cross-examination. Aside from lodging those and other various accusations against the trial court and court reporter, Moore's brief fails to provide a proper substantive analysis of why the trial court erred in its handling of the recusal motions, how the failure to record an alleged objection to the use of a presentence investigation report impacted this case, or why the judgment adjudicating guilt should be overturned based on those complaints.

Because we conclude that Moore has inadequately briefed his remaining multifarious complaints and failed to show how they are of any consequence to the outcome of this case, we overrule Moore's remaining points of error.

## V.      Conclusion

We affirm the trial court's judgment.

                                              Scott E. Stevens
                                              Justice

Date Submitted:       May 3, 2021
Date Decided:         September 2, 2021

Do Not Publish